Rock County, Appellant, vs. Weirick, Respondent.

*October 6—October 25, 1910.*

*Counties: Title abstracts: Public records: Right to copy: Unauthorized sale of county property: Compelling restoration: Equity: When plaintiff failing in equity may have legal relief.*

1. By ch. 352, Laws of 1864, counties were authorized to purchase complete abstracts of title to the real estate therein, but the time limited for the exercise of this power, as extended by ch. 39, Laws of 1867, expired in June, 1867, and thereafter there was no express authority for establishing anything of that character

beyond a tract index, until the enactment of ch. 149, Laws of 1881.

2. A county cannot without legislative authority go into the abstract business for profit.

3. Where a county, assuming that it had power to procure title abstract books and keep them in the register's office for the benefit of the public, contracted for the compilation of such books, and a few days later the legislature supplied the necessary authority and the work thereafter proceeded to completion, the books were not mere literary property of the county, but became a part of the public records of the register's office which any person had a right to copy under the reasonable supervision of the register, even for the purpose of making a rival set of abstract books.

4. Even though the "purchasing committee" of a county board had no authority to sell to the register of deeds certain blank books belonging to the county (for which he paid $48), yet after he had in good faith expended $900 in copying into said books the public abstracts of title, with a view to going into the abstract business at the close of his official term, a court of equity would not compel him to restore the books to the county upon tender of the price paid by him.

5. There are two cases in which a plaintiff who has planted his suit in equity and failed to sustain it may be given legal relief if the proof shows that he has a good cause of action at law therefor: (1) where a cause of action in equity once existed and is stated in the complaint, but because of the happening of some event for which the plaintiff is not responsible it no longer exists; (2) where plaintiff alleges a good cause of action in equity in good faith believing it capable of proof, but fails to prove some fact essential to a recovery in equity because such fact never existed. In both cases the complaint must state a good cause of action in equity and the plaintiff must in good faith believe it to exist at the time.

6. Where, in an equitable action by a county to prevent the register of deeds from copying the county abstract books, it is sought incidentally to recover the county's share of fees collected by him for abstracts, but upon the face of the complaint plaintiff was never entitled to equitable relief of any kind, the entire complaint should be dismissed without prejudice to an action at law to recover the alleged fees.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

This is an action in equity brought by the county to perpetually enjoin the defendant, who is the register of deeds of said county, from making copies of the abstract books owned by the county and kept in the register's office. In the year 1880 the county board of supervisors of *Rock* county, after considering for several months the question of installing a tract index in the register's office, decided to have made and ·placed in the register's office a complete title abstract of the real estate of the county, using Walton's patented system, and in pursuance of this conclusion, on January 7, 1881, the county board authorized the county clerk to purchase the exclusive right and privilege to use Walton's system of title abstract to lands in *Rock* county and to make a contract with one Valentine, who was then the register of deeds of the county, to make and complete said title abstract within two years from date, for which Valentine was to be paid the sum of $3,200 on acceptance of the books. It appears that the formal written contract was executed March 17, 1881. The abstract books were not completed until some time in the fall of 1885, and in November of that year they were accepted by the county, and in the following January the county board provided that the abstract books should be kept by the register of deeds and that he should charge the sum of twenty-five cents per entry for making abstracts therefrom; that he should keep the abstract books written up, and should receive for such labor and for making the abstracts one half of all the fees received for abstracts and pay over the other half every three months into the county treasury. The plan so adopted was carried out by successive registers of deeds until shortly before the commencement of this action. On January 9, 1897, the county board instructed the then register of deeds to allow no one to make abstracts for sale from the county books.

The defendant, *Weirick,* became register of deeds in January, 1903, and has remained in office ever since, his salary

being fixed at $2,000 per year during the first two years and at $1,800 per year during the subsequent time. From the time he went into office up to the 1st of January, 1910, the defendant has regularly turned over one half of the fees received by him for making abstracts of the county, but he did not turn over the amount received during the first quarter of the year 1910. In November, 1909, the defendant purchased sixteen blank books belonging to the county through the purchasing committee of the county board, paying therefor $48, and immediately commenced copying the county abstract records into these books for the purpose of going into the abstract business at the end of his term of office. . At the time of the commencement of this action he had expended about $900 in such work. In March, 1910, the county board notified him to "immediately cease copying the abstract books owned by *Rock* county and to remove from the office of the register of deeds for *Rock* county all persons under his personal employ." During the same month the county board caused demand to be made upon the defendant for the return of the sixteen books, and at the same time tendered to the defendant the sum of $48 which he had paid for them.

The relief demanded by the complaint is not only to perpetually enjoin the defendant from copying the books, but also to compel the surrender back to the county of the books with all the entries in them, and to compel the defendant to account for and pay over to the county its share of the fees received for abstracts which has not already been accounted for. The circuit court decided that the abstract books were public records and that the defendant was entitled to copy them, and entered judgment dismissing the complaint, from which the county appeals.

For the appellant there were briefs signed by *John L. Fisher,* district attorney, and *William Ruger,* of counsel (by *William Ruger*), and oral argument by *Mr. Ruger.* As to common-law rights in respect to public records, they cited

1 Greenl. Ev. § 475; 34 Cyc. 592–594; 8 Current Law, 1698–1700; *Hanson v. Eichstaedt,* 69 Wis. 538. And to the point that the county abstract books were its literary property, they cited, among other authorities, *Dart v. Woodhouse,* 40 Mich. 399; *Leon L. & A. Co. v. Equalization Board,* 86 Iowa, 127, 53 N. W. 94, 17 L. R. A. 199; *Booth & H. A. Co. v. Phelps,* 8 Wash. 549, 36 Pac. 489, 23 L. R. A. 864.

For the respondent there was a brief by *F. C. Burpee* and *Jeffris, Mouat, Smith & Avery,* and oral argument by *Mr. Burpee* and *Mr. M. G. Jeffris*

WINSLOW, C. J. The important question in this case, to which all others are merely subsidiary, is whether the county abstract books of *Rock* county are a part of the public records of the register's office. If they are, any person has a right to copy them under the reasonable supervision of the register of deeds, even for the purpose of making a rival set of abstract books. Sec. 700, Stats. (1898); *Hanson v. Eichstaedt,* 69 Wis. 538, 35 N. W. 30.

It is argued on behalf of the county that the abstract books were merely the literary property of the county and not public records, and hence that the county could prevent the copying of the books and thus protect itself from competition in the abstract business. This argument is based principally on the fact that in January, 1881, when the county board authorized the making of the contract with Valentine to compile the abstract books, there was no provision of law authorizing or requiring the county to keep any such books, and hence it is claimed that the status of the books as merely literary property was then irrevocably fixed, and could not be changed by any subsequent legislation which recognized the right of the county to make and keep abstract books as part of the public records.

We are unable to agree with this argument. It is true that there was no express provision of law in force in Janu-

ary, 1881, which authorized a county to establish a public abstract system.    By ch. 352 of the Laws of 1864 any county had been authorized to purchase a "complete and reliable abstract of title" to the real estate of the county, providing the purchase should be made before June 1, 1864, and by ch. 39 of the Laws of 1867 this time limit had been extended to June, 1867, but it is evident that the powers thus granted had expired by limitation.    These last named acts, however, required the making and keeping up of tract indices in the discretion of the respective county boards, and these provisions passed into the Revised Statutes of 1878 and became sec. 762 of those Statutes.

Thus it appears that the condition of the law when the county board was considering the question of establishing a tract index system in 1880 was this: A tract index was authorized to be kept, but there was no express authority to establish abstract books, although a complete abstract system had been twice permitted to be substituted for the tract index under time limits which had expired.    It seems a fair presumption that in some county or counties abstracts had been instituted as a part of the county records under the acts of 1864 and 1867.    Under these circumstances the county board concluded not to install the tract index system, but to obtain and keep up a complete set of abstract books "to be made and owned by the county," as is said in the report of the committee recommending the scheme, which report was adopted by the county board.    That this system was adopted because it was believed to be a public benefit there can be no doubt from the wording of the report above referred to.

It appears that the written contract for the making of the abstract was not executed until March 17, 1881.    On the 22d of the same month ch. 149 of the Laws of 1881 was passed, which provides in substance that any county having a tract index may discontinue the same "whenever such county *may have adopted,* or may hereafter adopt and shall keep and

maintain, a complete abstract of title to the real estate of such county as part of the official records of the register of deeds of such county." This provision passed into sec. 762 of the Statutes of 1898 with slight changes in verbiage. It recognized the fact that some counties already had abstract books, and by necessary implication authorized any county to adopt the system. At that time the contract for the *Rock* county system had been made, but it is not supposable that any material work had been done upon it, for the written contract was not made until March 17th and the work was not completed until the summer of 1885.

Thus the county had assumed that it might lawfully procure the abstract books and keep them in the register's office for the benefit of the public, and before any substantial work was done on the system the legislature passed a law authorizing the installation of just such books in the register's office as a part of the public records, and thereafter the work was done, the books accepted and placed in the register's office while the provisions of this law were in full force and effect.

A county is a governmental agency with limited powers, all of which are prescribed by the statute. *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798. It will hardly be claimed that *Rock* county had power to go into the abstract business for profit, without legislative authority, although such authority has now been given to counties having a population of 60,000 and over. Ch. 326, Laws of 1909. When it had, however, assumed that it had power to install abstract books as a part of the public records and made a contract for the compilation of the books, and the legislature immediately supplied the necessary authority and the work thereafter proceeded to completion, would it not be hypercritical to say that the books are not public records because the formal contract for them was made a few days before the legislature authorized the making of such a contract? We think so, and so thinking we reach the conclusion, following the *Eichstaedt*

*Case* (69 Wis. 538, 35 N. W. 30), that the county cannot prevent the copying of these public records by the defendant. *Chicago T. & T. Co. v. Danforth,* 236 Ill. 554.

It appears that the respondent purchased the sixteen books in question of the *purchasing* committee of the county board. It is argued, and not seriously disputed, that this committee had no authority to *sell* the county property, and hence that the respondent acquired no title to the books. Before the commencement of this action the county demanded the return of the books and tendered back the money paid therefor,· and now claims the right to the possession of the books on the ground that the title never ⸍passed to the respondent, even should it be held that the county abstract books themselves are public records and may be properly copied. It is a fact, however, that the defendant has laid out about $900 in transferring into these books the entries in the abstract books of the county, so that they constitute now a partially completed abstract system worth at least the amount so expended, instead of a set of blank books which could be duplicated at any book bindery. There seems no question of the good faith of the defendant in making the purchase and copying the entries into the books. It would be manifestly grossly unjust to take from him the money and labor which he has spent in good faith in transforming mere blank books into a partial abstract system. Courts of equity do not allow themselves to be made the instruments of injustice in this manner. He who appeals to equity must do equity, and it is certainly not equitable to require the return of a partial abstract system worth $900 in place of mere blank books worth $48, especially when the $48 has been paid and the blank books may be easily duplicated.

Even in actions at law like replevin this court has held that, where the value of the property is sought to be recovered, only the value before it was improved by defendant's labor and skill can be recovered where the improvements were made by defendant under a good-faith belief in his title. *Hunger-*

*ford v. Redford,* 29 Wis. 345. We conclude that there can be no recovery of the books on this ground.

As to the claim to recover half of the fees received by the defendant for making abstracts during the first quarter of the year 1910, we conclude that the circuit court rightly denied a recovery in this action. The plaintiff brought its action in equity, stating all the facts which it claimed entitled it to the purely equitable relief by way of injunction and surrender of the books. Among these facts were certain facts which it is claimed entitled it to relief by way of recovery of half the money received by the defendant for abstracts; but these were not stated as a separate cause of action, but only as incidental to the main equitable relief by injunction, under the familiar principle that where equity takes hold of a given situation and affords equitable relief it will in the same action give relief for all claims incidental to the main equitable cause of action. *Swihart v. Harless,* 93 Wis. 211, 67 N. W. 413.

Under the decisions of this court there are two well defined cases where a plaintiff who has planted his suit in equity and failed to sustain it may be given purely legal relief if the proof shows that he has a good cause of action at law therefor: first, where a cause of action in equity once existed and is stated in the complaint, but, because of the happening of some event for which the plaintiff is not responsible, it no longer exists (*Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75); second, where, although a cause of action in equity never in fact existed, the plaintiff alleges a good cause of action in equity, in good faith believing it capable of proof, but fails to prove some fact essential to a recovery in equity because such fact never existed. *Franey v. Warner,* 96 Wis. 222, 71 N. W. 81. In both cases, however, the complaint *must state a good cause of action in equity,* and the plaintiff must in good faith believe it to exist at the time.

In the present case no cause of action in equity ever existed

and none was stated in the complaint. On the face of its complaint the plaintiff was never entitled to equitable relief of any kind, hence the case does not fall within either of the classes above mentioned. The cause of action for the fees is in form a cause of action at law for money had and received. *Barchent v. Snyder,* 128 Wis. 423, 107 N. W. 329. The defendant would be entitled to trial thereof by jury. A court of equity could only hear and determine it by reason of consent of the parties or because it was so closely connected with an equitable cause of action that it could be rightly considered as incidental thereto and hence could be considered and decided therewith. Where there never has been an equitable cause of action, and none is even stated in the complaint, this reason utterly fails. We deem the dismissal of the entire complaint, therefore, the best and most logical administration, but this is not to be understood as in any way prejudicing an action at law to recover the alleged fees.

It seems fair to presume that no such action will be necessary. The rights of the parties in the books being now settled, there seems no reason why the defendant should not pay over the county's share of the fees and obviate further litigation. He stated in his communication to the county board of April 1, 1910, that he was prepared to pay over one half of his earnings for abstract work for the preceding quarter as soon as he was "properly advised in the premises." There ought to be no need of further lawsuits and we assume there will be no such need.

*By the Court.*—Judgment affirmed.