STATE of Wisconsin EX REL. Brandon R. SCHULTZ, Petitioner-Appellant,

v.

Donald A. BRUENDL, individually and in his capacity as Sheriff, County of Green Lake, Respondent-Respondent.

Court of Appeals

*No. 91–0863. Submitted on briefs February 7, 1992.—Decided March 4, 1992.*

(Also reported in 483 N.W.2d 238.)

101

On behalf of the petitioner-appellant the cause was submitted on the briefs of Brandon R. Schultz, *pro se.*

On behalf of the respondent-respondent the cause was submitted on the brief of *John B. Selsing,* corporation counsel.

On behalf of the State of Wisconsin an *amicus curiae* brief was submitted by *James E. Doyle,* attorney general, and *Laura Sutherland,* assistant attorney general.

On behalf of the Wisconsin Counties Association an *amicus curiae* brief was submitted by *Robert W. Mulcahy* and *John J. Prentice* of *Michael, Best & Friedrich* of Milwaukee.

Before Brown, Anderson and Snyder, JJ.

BROWN, J. Brandon Schultz appeals from an order denying his petition for a writ of mandamus to compel the county sheriff to provide him with an inventory of his arsenal. On appeal, Schultz argues that sec. 59.14, Stats., obliges a county sheriff to provide such records and that the circuit court erred in not granting his petition for a writ of mandamus. We hold that because an arsenal record is not a paper "required to be kept," sec. 59.14 is inapplicable. Accordingly, we affirm the order of the circuit court.

In September 1990, while incarcerated at the Kettle Moraine Correctional Institution, Schultz mailed to Sheriff Donald Bruendl of Green Lake county the following request written on a paper towel:

Yo! Sheriff,

I'm a pris'ner at KMCI, ya see, and I want you to give me photocopies of your dept.'s latest armory inventory records that contain the make, model, and amount of every type of gun used by your dept. Yo! Be good to this homeboy and obey me by 9-29-90.

By letter of September 28, 1990, Bruendl denied the request stating that "this information is confidential for security reasons and the protection of my officers."

Schultz then filed a petition for a writ of mandamus in circuit court, which petition specified only sec. 59.14, Stats., as the source of authority for his request.[1] The circuit court, evidently without a hearing, denied the petition, finding that "the requested information is not the type intended by law to be released. The Court also finds that the Sheriff's declination to release the information was on good and clear grounds, security and protection of the officers."

Schultz moved for reconsideration, arguing in his brief that the sheriff's reasons did not establish any recognized exception to the disclosure provisions of sec. 59.14, Stats. The circuit court denied the motion, again citing safety and security as good grounds and further found that "releasing the information would be of harm to the public interest and would far outweigh any benefit which would arise from granting the request." Schultz appealed.

We begin our discussion by noting that this court certified this question to the Wisconsin Supreme Court on October 16, 1991; that court elected not to accept

---

[1] We note parenthetically that sec. 59.14(2), Stats., provides that "[i]f any such officer neglects or refuses to comply with any of the provisions of this section he shall forfeit five dollars for each day such noncompliance continues."

certification. We then sought *amicus curiae* briefs from the Wisconsin attorney general's office and from the Wisconsin Counties Association.

We further note that the appellate brief from the Green Lake County Corporation Counsel addressed this as a case arising out of the open records law, secs. 19.21 to 19.39, Stats. We believe that the circuit court's actions, although not so specifically denominated, also reflected a similar ch. 19, Stats., analysis. At no point, however, in the circuit court or on appeal did Schultz argue his to be a claim made pursuant to ch. 19.

Case law makes clear that sec. 19.35, Stats. (the access to records provision of the open records subchapter) and sec. 59.14, Stats., create different rights of inspection and have different exceptions to them. We believe it instructive to set forth this case law here.

Section 19.35(1)(a), Stats., sets forth the general rule that "[e]xcept as otherwise provided by law, any requester has a right to inspect any record." However, as our supreme court has stated, this right is not absolute: "There may be situations where the harm done to the public interest may outweigh the right of a member of the public to have access to particular public records or documents. Thus, the one must be balanced against the other in determining whether to permit inspection." *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 681, 137 N.W.2d 470, 474 (1965). If the custodian refuses to allow inspection, the custodian must state specific policy reasons for the refusal and these reasons then provide a basis for review by a court. *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 427, 279 N.W.2d 179, 184 (1979).

██

While sec. 59.14(1), Stats., specifies those public officials subject to its purview,[2] the right of inspection it creates in "those persons who properly come under its umbrella [is] 'an absolute right of inspection subject only to reasonable administrative regulations . . . '." *State ex rel. Bilder v. Township of Delavan,* 112 Wis. 2d 539, 553, 334 N.W.2d 252, 260 (1983) (quoting *State ex rel. Journal Co. v. County Court,* 43 Wis. 2d 297, 308, 168 N.W.2d 836, 841 (1969)). The supreme court has recognized that this absolute right is not without exception, however. *Bilder,* 112 Wis. 2d at 554, 334 N.W.2d at 260. The first exception is that documents may be closed to public examination when there is a statute authorizing the sealing of otherwise public records. *Id.* The second is that disclosure must yield if it infringes on a constitutional right. *Id.* at 555, 334 N.W.2d at 260. The third, less clearly established in that case, is that the circuit court may limit public access to judicial records when the administration of justice requires it. *See id.* at 556, 332 N.W.2d at 261.

Schultz argues that because a sheriff's arsenal records come under none of these exceptions, the circuit court erred in not requiring the sheriff to comply with the request. We disagree. We hold that Schultz' request does not satisfy that portion of sec. 59.14(1), Stats., which requires inspection only of "all books and papers

---

[2] Every sheriff, clerk of the circuit court, register of deeds, county treasurer, register of probate, county clerk and county surveyor . . . shall open to the examination of any person all books and papers required to be kept in his or her office and permit any person so examining to take notes and copies of such books, records, papers or minutes . . ..

Section 59.14(1), Stats.

*required to be kept* in his or her office . . .." (Emphasis added.)

The earliest case addressing this particular statutory requirement appears to be *Rock County v. Weirick,* 143 Wis. 500, 128 N.W. 94 (1910). There, our supreme court held that Rock county's abstract books were subject to inspection under sec. 700, Stats. (1898), a predecessor statute to sec. 59.14, Stats. *Weirick,* 143 Wis. at 504, 506-07, 128 N.W. at 95, 96. The county had argued that when it contracted to compile the abstract books, there was "no provision of law authorizing or requiring the county to keep any such books." *Id.* at 504, 128 N.W. at 95. The supreme court rejected this argument because the legislature changed the law to authorize such books a few days after the formal contract was made. *See id.* at 506, 128 N.W. at 96.

More recent cases involving sec. 59.14, Stats., have all involved court records.[3] The earliest of these cases,

---

[3]*See State ex rel. Bilder v. Delavan Township,* 112 Wis. 2d 539, 334 N.W.2d 252 (1983); *State ex rel. Journal Co. v. County Court,* 43 Wis. 2d 297, 168 N.W.2d 836 (1969); *In re Estates of Zimmer,* 151 Wis. 2d 122, 442 N.W.2d 578 (Ct. App. 1989); *C.L. v. Edson,* 140 Wis. 2d 168, 409 N.W.2d 417 (Ct. App. 1987); and *City of Madison v. Appeals Committee,* 122 Wis. 2d 488, 361 N.W.2d 734 (Ct. App. 1984). We here note that the attorney general contends, on the strength of *Zimmer* and *Edson,* that the ch. 19, Stats., balancing test ought to be applied to records which could be inspected under both ch. 19 and sec. 59.14, Stats. We distinguish those cases. In *Zimmer,* the requester argued a right to inspect under "sec. 59.14, Stats., together with various provisions of the open records law . . .." *Zimmer,* 151 Wis. 2d at 127, 442 N.W.2d at 580. In *Edson,* the requester "commenced a mandamus action under sec. 19.37(1)(a), Stats. . . .." *Edson,* 140 Wis. 2d at 174, 409 N.W.2d at 419. Here, however, as we have noted, Schultz pointedly avoided implicating the open records law under ch. 19. *Zimmer* and *Edson* are, therefore, inapposite.

*State ex rel. Journal Co. v. County Court,* 43 Wis. 2d 297, 168 N.W.2d 836 (1969), which involved a demand to inspect a circuit court decision, predicated the application of the statute upon a determination that the document sought to be inspected is one required to be kept. *Id.* at 309–10, 168 N.W.2d at 841–42. The court looked to sec. 59.39(1), Stats., which requires the clerk of circuit court to "[f]ile and keep all papers properly deposited . . . in every action or proceeding . . .," *id.,* and concluded that a court decision is required to be filed or kept within the meaning of sec. 59.14(1). *See Journal,* 43 Wis. 2d at 309–10, 168 N.W.2d at 841–42.

We conclude, then, that one who requests information under sec. 59.14, Stats., must first show that the document sought is one "required to be kept" before he or she may successfully invoke the statute. On appeal, Schultz relies upon sec. 59.23(5), Stats., which requires a sheriff to "[d]eliver on demand to his successor in office . . . all books, records . . . and other papers belonging to his office and in his possession . . .." We are unpersuaded by this argument.

In essence, this argument would have us read the word "kept" as though it were perfectly synonymous with "retained" or "preserved." While these are common enough meanings of the word "kept," *see Webster's Third New International Dictionary* 1235 (1976), the particular sense of the protean concept embodied in "keep" depends upon the object it refers to—"to keep time," for example, expresses a very different sense of the word "keep" than does "to keep watch," or, for that matter, "to keep company." *See The Random House Dictionary of the English Language* 1048 (2d ed. 1987). We believe that, in reference to books and papers, the

word "keep" is limited to the following definition: "to maintain a record in (as of daily occurrences or transactions) <~a journal> <~books for a business firm> . . . to enter (as an account or record) in a book." *Webster's* at 1235. Nontechnical words are to be construed according to their common and ordinary usage, which may be established by the definition of a recognized dictionary. *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 484, 464 N.W.2d 654, 662–63 (1991).

We hold, then, that in sec. 59.14(1), Stats., "books and papers required to be kept" are not *all* those which the custodian is obliged merely to retain or preserve; rather, they are only those which the custodian is obliged by law to maintain or engender.[4] We further conclude that the requester has the burden of showing just what authority constrains the official to maintain or engender the record requested.

Schultz argues that such a reading of the statute flies in the face of language in the *Journal* case, where the supreme court stated:

> While the above statement [discussing the filing requirement of a court decision] controls the facts in this case, it should be made clear, as we did in *Youmans,* that the duty of an officer to produce records is not confined only to those records that he is required

---

[4]Because we hold that the request does not satisfy the requirements of sec. 59.14(1), Stats., we need not address Schultz' arguments which speak to the various exceptions available under that statute. Similarly, because we conclude that mandamus did not lie, we need not address his contentions that the sheriff violated his due process rights "by his failure to perform his purely ministerial duties" or that the circuit court's "application of mandamus was erroneous."

to keep but extends to other records in his custody that may deal with his official duties.

*Journal,* 43 Wis. 2d at 310, 168 N.W.2d at 842.

We believe that this statement, explicitly extending as it does beyond the facts of the case, is dicta. Language broader than necessary to determine the issue before the court is dicta. *See Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.,* 148 Wis. 2d 910, 917, 437 N.W.2d 213, 216 (1989). Beyond this, we also conclude that this language, alluding as it does to *Youmans,* a ch. 19, Stats., case, was in fact making reference to inspection rights under that chapter, not under sec. 59.14, Stats.

Our interpretation of sec. 59.14(1), Stats., comports with 67 Op. Att'y Gen. 12 (1978), where Attorney General La Follette opined that a sheriff's radio log and other intradepartmental documents were "public records within the meaning of sec. 19.21(1), Stats. . . . even though they are not records, 'books and papers required [by law] to be kept in his office' and are not subject to the statutory right of inspection and copying by any person under the provisions of sec. 59.14(1), Stats." *Id.* at 12 (addition in original).

Our limited reading of "kept" also serves common sense. Were we to adopt Schultz' rationale that a "kept" paper was any one which the present sheriff happened to inherit from his or her predecessor, then the papers subject to inspection under sec. 59.14, Stats., would undoubtedly vary wildly from one county to the next, their existence being dependent only upon what predecessors elected to retain or amass. "It is elementary that a statute should be construed so that as nearly as possible it will have a uniform application." *Gleasman v.*

*Greater Rockford Airport Auth.,* 339 N.E.2d 318, 321 (Ill. Ct. App. 1975).

As we noted above, the circuit court's denial of Schultz' petition is founded upon a ch. 19, Stats., balancing test analysis, which is inappropriate here because Schultz has never invoked that chapter. However, this court will not reverse a correct decision though the reason for that decision may have been erroneously expressed. *See Mueller v. Mizia,* 33 Wis. 2d 311, 318, 147 N.W.2d 269, 273 (1967). Moreover, the question presented here is one of statutory construction. The construction of a statute is a question of law as is the application of a statute to a particular set of facts; either allows us to review the issue independent of the circuit court's determination. *See Hainz v. Shopko Stores, Inc.,* 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984).[5]

*By the Court.*—Order affirmed.

[5]We note in closing that in its *amicus* brief, the Wisconsin Counties Association urges this court to hold that the inspection right under sec. 59.14(1), Stats., does not require the custodian to photocopy the records and send them to the requester. However, the issue is moot in that, given our holding, it will not have any practical legal effect upon the existing controversy. *See Ziemann v. Village of North Hudson,* 102 Wis. 2d 705, 712, 307 N.W.2d 236, 240 (1981). We do not, therefore, reach this issue.