STATE EX REL. JOURNAL COMPANY, Respondent, v. COUNTY COURT OF RACINE COUNTY, the Honorable Leander J. Foley, Jr., presiding, Appellant.

*No. 291. Argued June 3, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 836.)

300

302

For the appellant there were briefs by *Foley, Capwell, Foley & Seehawer,* and oral argument by *Rex Capwell* and *Robert Anker Christensen,* all of Racine.

For the respondent there was a brief by *Foley, Sammond & Lardner* and *James P. Brody, John R. Collins,* and *Robert A. Christensen,* all of Milwaukee, and oral argument by *Mr. Collins* and *Mr. Christensen.*

HEFFERNAN, J.   Recent Wisconsin cases have discussed and clarified the right of a member of the public to inspect the records or papers filed with, or kept by, a governmental agency or officer.

*State ex rel. Youmans v. Owens* (1965), 28 Wis. 2d 672, 137 N. W. 2d 470, 139 N. W. 2d 241, considered the demand of Henry A. Youmans, publisher of the *Waukesha Freeman,* to inspect the report of the city attorney's investigation of alleged police misconduct that was in the hands of the mayor, as statutory head of the police department. No specific statute referred to the right of the public or of any person or citizen to inspect police records. Petitioner relied upon sec. 18.01, Stats., which provides in part:

"18.01 **Custody and delivery of official property and records.** (1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.

"(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof may prescribe, examine or copy any of the property or things mentioned in sub. (1)."

We therein held that sec. 18.01, Stats., was a restatement of the common law, and that this statute expressed the state of the law in Wisconsin prior to the adoption of sec. 18.01 and was applicable to all situations where the common law had not been specifically altered by legislative enactment. This line of reasoning was drawn from the earlier case of *International Union v. Gooding* (1947), 251 Wis. 362, 29 N. W. 2d 730, wherein the history of sec. 18.01 was discussed. Mr. Justice WICKHEM, writing for a unanimous court, traced the history of sec. 18.01 (1) and 18.01 (2) and concluded:

"It is stated in the revisor's notes that this subsection 'is believed to give expression to the general implied right of the public to consult public records.' In view of the presumption that a revisor's bill is not intended to change the law we conclude that this is the scope of the section. While it is possible to contend that the words are so clear as not to be subject to construction we are of the view that the common-law right of the public to examine records and papers in the hands of an officer has not been extended." (p. 372.)

For the determination in *Gooding*, it was not, however, necessary to define the common law concerning the right to inspect public documents.

When in *Youmans, supra*, reliance was placed upon sec. 18.01, Stats., to compel the production of the report, it was necessary for this court to determine the prior common law, of which *Gooding* found sec. 18.01 to be declaratory.

*Youmans* pointed out that the right to inspect public documents, stated under sec. 18.01, Stats., was subject to all the limitations of that right at common law.

We adopted in *Youmans*, as an authoritative statement of the common-law right to the inspection of public documents, the statement of the Vermont court in *Clement v. Graham* (1906), 78 Vt. 290, 63 Atl. 146. The Vermont court said, at pages 315, 316:

"We think it may be safely said that at common law, when not detrimental to the public interest, the right to inspect public records and public documents exists with all persons who have a sufficient interest in the subject-matter thereof to answer the requirements of the law governing that question."

In *Youmans* we set forth the procedure for a judicial determination of whether, in cases governed by the common law, specific harmful effect upon the public interest outweighed benefits to be obtained by following the general public policy favoring the right of inspection of public documents and records. This court pointed out that a refusal to permit inspection on the grounds of public interest or welfare must rest upon specifically stated reasons, whose sufficiency was subject to judicial scrutiny in accordance with stated guidelines.

*Beckon v. Emery* (1967), 36 Wis. 2d 510, 153 N. W. 2d 501, followed the *Youmans'* rationale and ordered that a mandamus issue directing the chief of police to permit the inspection of an accident report. We pointed out that the reasons given for withholding the records—that they were "confidential" or release would be "contrary to the public interest"—did not constitute the specific reasons required by *Youmans*. We concluded the *Beckon v. Emery* opinion stating:

"In short, there is an absolute right to inspect a public document in the absence of specifically stated sufficient reasons to the contrary." (p. 518.)

Thus, the *Youmans* and *Beckon* cases, both concerning actions brought pursuant to sec. 18.01, Stats., taken together, stand for the proposition that a right to inspection

of documents brought under *that section of the statutes* is subject to the common-law limitation that the inspection not be permitted if there is a specific showing that the public interest would be adversely affected.

The rehearing in *Youmans,* page 685a, however, controls the disposition of the instant case. The rehearing pointed out that prior to the enactment of sec. 18.01, Stats., in 1917, as part of the revisor's bill, there existed:

". . . certain statutes which authorized inspection of certain public records. There are many statutes that impose upon particular public officers the duty to keep certain records which evidence an express or implied legislative intent that such records be open to public inspection. With respect to public records of this category the common-law rule applied in the instant case would be inapplicable, and consequently the officer custodian thereof would have no right to refuse public inspection." (p. 685a.)

This statement in the *Youmans* rehearing is not dicta, as contended by the appellant. The very purpose of the per curiam opinion denying the rehearing was to make the point that common law did not control the legislative declarations of the right of inspection that were antecedent to sec. 18.01, Stats. These are statutory enactments of the right of inspection independent and in derogation of the common law that controlled the outcome of *Youmans* and *Beckon.* The statement in the *Youmans* rehearing is authoritative on the extent of the application of the common law.

It is the position of the respondent that its right to inspection rests upon the provisions of sec. 59.14, Stats., which was antecedent to the 1917 passage of sec. 18.01 and is, hence, not limited by the test of *Youmans* and *Beckon* that requires a judicial balancing of the right of inspection against an assertion of public interest in maintaining secrecy.

If this is correct, the petitioner's right to mandamus is absolute, and as we stated in *Youmans* the "officer custodian thereof would have no right to refuse public inspection."

Sec. 59.14 (1), Stats., provides:

"**59.14 Offices where kept; when open.** (1) Every sheriff, clerk of the circuit court, register of deeds, county treasurer, register of probate and county clerk shall keep his office at the county seat in the offices provided by the county or by special provision of law; or if there is none, then at such place as the county board directs. The county board may also require any elective or appointive county official to keep his office at the county seat in an office to be provided by the county. All such officers shall keep such offices open during the usual business hours each day, Sundays excepted, and except that the county board of each county may permit said officers to close their offices on Saturday or on legal holidays for such time as the county board directs, and with proper care shall open to the examination of any person all books and papers required to be kept in his office and permit any person so examining to take notes and copies of such books, records, papers or minutes therefrom."

This very law then appearing in the statutes as sec. 700, Rev. Stats. 1878, was construed by this court in *Hanson v. Eichstaedt* (1887), 69 Wis. 538, 35 N. W. 30. Then, as now, the statute included not only the duties of the register of deeds but also the duties of the clerk of circuit court with which we are concerned herein. Since their duties in regard to the right of public inspection are defined by the same statute, the construction given in *Hanson* as to the duties of the register of deeds is equally applicable to the clerk of circuit court. Therein, this court held that "any person," with no requirement that he have a special interest in the subject matter of the document, had a right under the statute to inspect and copy documents, subject to no limitation other than those in the statute itself and:

". . . the payment of fees when allowed, and such reasonable supervision and control by such officer as are essential to the convenient performance of his duties, and the current business of the public." *Hanson, supra,* page 547.

In *Hanson,* the register of deeds, who resisted the use and copying of the records, contended:

". . . that the right to inspect and copy public records is confined to those having some interest in the particular record sought to be inspected or copied, and does not extend to one seeking to do so from mere curiosity, or for his own private gain. Such seems to be substantially the rule at common law . . . . It is claimed that the same rule should be applied under our statutes." *Hanson, supra,* page 541.

This claim was specifically rejected, and the statute in *Hanson,* the same statute that respondent contends is applicable here, was found to be a legislative declaration independent and in substitution of the common law. This rationale was alluded to in the *Gooding Case* and was specifically confirmed by the rehearing in *Youmans.* We are satisfied that counsel for appellant misunderstands the statements of *Gooding* and *Youmans* if it is his position that the common-law rule remains applicable to specific "right to know" statutes exclusive of sec. 18.01, Stats.

We thus conclude that the legislature has declared that those persons who properly come under the umbrella of sec. 59.14, Stats., in demanding a public record from the officers named therein have an absolute right of inspection subject only to reasonable administrative regulations as set forth in *Hanson.* There need be no showing of any special interest as required at common law, and, as specifically set forth in that case, the term, "any person," that was selected by the legislature was to be construed literally and not subject to any common law or special meanings. It found the statute to be plain and unambiguous. It is clear that The Journal Company is "any

person" within that statutory category. Sec. 990.01 (26) provides that " 'Person' includes all partnerships, associations and bodies politic and corporate."

Contrary to appellant's unsupported assertion, this statute does not require that the person seeking to inspect records be a citizen. Even a cursory reading of *Beckon* and *Youmans* shows that no such requirement is set forth therein.

Even though it be clear that prior decisions of this court make it apparent that sec. 59.14, Stats., is independent of common law, the question remains whether the mandamus action of The Journal Company is properly founded upon that section of the statutes. We believe that it is.

Sec. 270.33, Stats., which is applicable to all courts of record provides:

"270.33 **Trial by court; findings, judgment.** Except in actions and proceedings under ch. 299, upon a trial of an issue of fact by the court, its decision shall be given in writing and filed with the clerk within 60 days after submission of the cause, and shall state separately the facts found and the conclusions of law thereon; and judgment shall be entered accordingly."

Sec. 59.395 (1), Stats., provides:

"59.395 **Clerk of court; duties.** The clerk of circuit court shall: (1) Keep court papers, books and records as specified in s. 59.39."

Sec. 253.30, Stats., provides that the clerk of circuit court shall perform all the duties set forth in sec. 59.395 for the county court (except those duties concerned with probate matters and the Children's Code).

Sec. 59.39, Stats., provides that the clerk of court shall:

"(1) File and keep all papers properly deposited with him in every action or proceeding . . . ."

These statutes read together lead to the conclusion that the clerk of court is, under the statutory scheme, the

custodian of the records of the county court, and, in this case of the impounded decision that was placed in his hands.

We place no credence, insofar as this action is concerned, with the strained distinction urged by appellant that the decision here has not been "filed." The statute merely requires that there be an examination of "books and papers required to be kept." It is obvious that sec. 270.33, Stats., requires the decision to be "filed," and, hence, irrespective of the term or conditions imposed upon its deposit by the county judge, it is subject to inspection if it is in the office and is required to be filed or kept there.

While the above statement controls the facts in this case, it should be made clear, as we did in *Youmans*, that the duty of an officer to produce records is not confined only to those records that he is required to keep but extends to other records in his custody that may deal with his official duties.

Appellant also urges, since sec. 247.19, Stats., permits the impounding of the record or evidence in a case upon a written order of the court made in its discretion in the interest of public morals, that, therefore, in this case the decision can be impounded. This does not follow, for the reference of sec. 247.19 is to the evidence or record and has nothing whatsoever to do with the impounding of a decision. Furthermore, in this case, the record and testimony were available to the public and no effort has been made to impound them or to deny the public right of inspection. The appellant's argument is not supported by sec. 247.19, and its reasoning is not persuasive as applied to this case.

Of course, the motive of the trial court in suppressing the decision was not in the interest of public morals, but rather in the interest of the child, to assure the enforcement of the decision in the German courts by avoiding a premature disclosure of the decision before a discussion

could be had with appropriate German judges. The able trial judge in his excellent opinion stated:

"Any international accord which may be reached will be of the greatest public interest and service and will make an inestimable contribution to the security and welfare of the children who are often helpless pawns or hostages to their parent's whims. The action in which the decision here under consideration was rendered is no doubt one of many most urgently demanding, on behalf of the children involved, some solution to bring stability and certainty into their disrupted lives. These, this court is well aware, were the considerations which constrained the court in the matter of *Bola v. Bola* to impound its decision lest it impair or damage the possibility of hope for the child's future. They are considerations which could not fail to trouble an experienced compassionate Family Court Judge, and strongly and properly motivate him to seek to promote in any way within his power, the emotional tranquility of the child before him."

We agree with Judge DUROCHER'S analysis and of his appraisal of the judge who tried the custody case. However, we have been advised of no powers possessed by any judge of this state to suppress a decision from the public after it has been made available to the parties thereto. Whatever the motives of the county judge may have been, and we acknowledge that they were of the highest nature, they cannot supersede the clear public policy pronouncements of the legislature that a decision must be filed with the clerk of court and when, so filed, it is subject to examination by "any person."

We are also satisfied that it is contrary to our Anglo-American policies of judicial administration to impound a decision of a court once the determination has been made and filed. While appellant argues that it is within the inherent power of a court to withhold its decision from the public while making its mandate known to the parties, we have been cited no instance of such exercise of power. While we recognize the inherent power of the

courts, in many respects, goes beyond those conferred by statute, we have been unable to find, and appellant has given us, no authority in this jurisdiction to sustain his point of view that such inherent authority exists with respect to withholding a decision. Rather, we believe it an inherent obligation of a court to promptly make its decisions available to the public.[2] We believe that the policy to be followed was properly summarized in 21 C. J. S., *Courts,* pp. 415, 416, sec. 223:

"Justice requires that the public shall have free access to the opinions of the courts and it is against sound public policy to prevent such access . . . ."

While the statement appearing in Corpus Juris Secundum quoted refers to appellate courts, we see no difference between a trial court and a final appellate court in its obligation to reveal its decisions.

In *New York Post Corp. v. Leibowitz* (1957), 2 N. Y. 2d 677, 163 N. Y. Supp. 2d 409, 143 N. E. 2d 256, a newspaperman sought a transcript of a judge's charge to a jury. The New York Court of Appeals, in ordering that the transcript be made public, relied upon particular provisions of the New York Constitution, but pointed out at page 684, "No other rule is conceivable in a society nurtured on freedom of discussion of matters of public interest."

This statement parallels the public and legislative policy of the state of Wisconsin from its early history, and any legislation should be examined with the purpose, if possible, to effectuate that policy and not to defeat it. The courts have been the great repositories of personal liberty, and their obligation is not only to see that the conduct and performance of executive and legislative officials is

---

[2] There are, of course, well recognized exceptions to the rule of judicial disclosure, *e.g.,* grand jury testimony, the issuance of warrants prior to service, and other exceptions as determined by the legislature.

open to public scrutiny, but to maintain for themselves the high standards that they prescribe for others. It would ill behoove a court of this state to conclude that it has the inherent right to impose its mandates on the parties to an action, but to conceal those mandates from the examination of the public. While we recognize the exemplary purpose behind the trial judge's order herein, we can think of no device more subject to abuse, more conducive to a climate favoring star chamber judgments, and more likely to result in judicial caprice, than a mandate of this court upholding the order impounding this decision.

While no ground appears that would permit appellant to successfully plead over, we affirm the trial court's order granting additional time to amend its return.

*By the Court.*—Order affirmed, with leave granted to plead over within twenty days after the date of this mandate. In default of so doing, the writ of mandamus may issue in the circuit court.