STATE of Wisconsin EX REL. Alan BILDER,
Petitioner-Appellant,

v.

The TOWNSHIP OF DELAVAN, a municipal corporation of the State of Wisconsin, Edward J. Lindloff, Russell P. Jansen, Harold J. Dahlinger, Craig R. Craig, Richard F. Fuller, John O. Olson, Steven R. Wassel and their officers, agents and employees, Respondents,

GAZETTE PRINTING Co. and Newspapers, Inc.,
Intervenors-Respondents.

Supreme Court

No. 81–2182. Argued March 28, 1983.—Decided June 1, 1983.

(Also reported in 334 N.W.2d 252.)

542

For the appellant there was a brief by *James A. Walrath* and *Shellow, Shellow & Glynn, S.C.*, Milwaukee, and oral argument by *Mr. Walrath*.

For the intervenors-respondents there was a brief by *Richard R. Grant* and *Wickhem, Consigny, Andrews & Hemming, S.C.*, Janesville, and *Robert A. Christensen*, and *Foley & Lardner*, Milwaukee, and oral argument by *Mr. Christensen*.

SHIRLEY S. ABRAHAMSON, J.   This is an appeal from an order of the circuit court for Walworth county, Robert H. Gollmar, reserve circuit judge.   The circuit court order permitted Gazette Printing Co. and Newspapers, Inc. (the newspapers) to intervene in a suit brought by Alan Bilder, police chief, against the Township of Delavan and several of the town's officers, agents, and employees.   The newspapers contested Bilder's motion to seal the pleadings and documents he filed in the action.   In granting the motion to intervene the circuit court also opened the file to public examination.   This court granted direct review of the order upon certification of the court of appeals.   Secs. 808.05(2), 809.61, Stats. 1981–82.

The court of appeals certified two issues: (1) did the circuit court err in permitting the newspapers to intervene in the pending action to gain access to documents which had been sealed by the circuit court; (2) did the

circuit court err in rescinding its earlier order sealing the documents, thus opening the documents filed with circuit court in this case to public examination. We hold that the circuit court did not err and therefore affirm the circuit court's order.

## I.

The facts giving rise to this appeal are not in dispute. The controversy between Alan Bilder, police chief for the Township of Delavan, and the Delavan town board dates back to the spring of 1981. In May 1981 the town board held a series of nonpublic meetings to discuss complaints against Bilder. The town board suspended Bilder with pay pending an investigation of the complaints. The town board retained an attorney to investigate the charges against Bilder, and the attorney filed a written report with the town board on June 13, 1981, recommending that the town institute removal proceedings. On the basis of that report the town scheduled a public hearing on the charges for August 17, 1981.

On August 11, 1981, Bilder filed a petition for a writ of prohibition and mandamus in the circuit court for Walworth county to compel the town board to reinstate him as police chief and to enjoin the town from conducting a hearing on charges of alleged misconduct. The petition sets forth the chronology of events and alleges that the town board's procedures in this case violated both the town board's own procedures for removal of officials and the state's open meetings law. Bilder asserts that he had no other adequate remedy at law since an appeal from an adverse decision after a hearing on the charges would come too late to require the town to follow the law and to prevent the dissemination of charges. More than 300 pages of exhibits which had not been made public by the town and apparently relate to the town board's investiga-

tion of and meetings about Bilder are appended to the petition. Bilder simultaneously filed a motion to seal the court file on the ground that "the pleadings and exhibits contain reference to allegations . . . which would be extremely damaging to [Bilder's] character, reputation and future career in law enforcement if made public." The circuit court signed Bilder's proposed order on the day he filed it. That order sealed the "file" pending further order of the court, restrained the town board from conducting any hearing on the charges, and scheduled a hearing on Bilder's petition for October 5, 1981. Although the circuit court order refers to sealing the file, apparently Bilder's petition is not under seal; only the exhibits are in a sealed unopened envelope.

Within two weeks of the filing of the petition, Bilder and the town board entered into a stipulation, agreeing that the town board would rescind Bilder's suspension as police chief, that the town board would be restrained from any further action which might lead to Bilder's dismissal, and that the circuit court's order dated August 11, 1981, sealing the pleadings and exhibits would be made permanent, but that all orders and writs issued by the circuit court may be made public by either party without leave of court. Although the record does not clearly indicate the sequence of events, the parties agree that at the same time that Bilder and the town board submitted to the circuit court a proposed order approving their stipulation, Gazette Printing Co. filed a motion to intervene in the action and to open the file. Later, Newspapers, Inc., also sought to intervene to open the file.

The circuit court heard oral argument on the newspapers' motion to intervene and unseal the file in August 1981. Apparently without reviewing the sealed documents, the circuit court on October 24 granted the motions to intervene, rescinded its order sealing the files, and refused to permit Bilder to withdraw the exhibits

annexed to his petition. It stayed its order pending appeal.

## II.

The first question this court must decide is whether the circuit court erred in permitting the newspapers to intervene in the action as a matter of right. Sec. 803.09 (1), Stats. 1981–82,[1] the Wisconsin intervention statute, establishes a four-part test that the proposed intervenor must meet: (1) timely application for intervention; (2) an interest relating to the property or transaction which is the subject of the action; (3) that the disposition of the action may as a practical matter impair or impede the proposed intervenor's ability to protect that interest; and (4) that the proposed intervenor's interest is not adequately represented by existing parties.

[1] Sec. 803.09 (1), Stats. 1981–82, provides as follows:

"803.09  **Intervention.** (1) Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties."

Sec. 803.09 (2) 1981–82, provides for permissive intervention:

"(2) Upon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order or rule administered by a federal or state governmental officer or agency or upon any regulation, order, rule, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely motion may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Bilder challenges the newspapers' intervention on two grounds: first, that the newspapers do not have an "interest relating to the property or transaction which is the subject of the action," and, second, that the motion to intervene was not timely. Bilder contends that the "subject of the action" is whether the town board's investigation and disciplinary proceedings against him were lawful; he urges that the newspapers' claimed right of access to the court file is only a collateral issue, too remote from the subject of the action to create a right of intervention.

■

The newspapers' stated interest in this action is opening a court file to public examination. The newspapers argue that the clear language of sec. 59.14(1), Stats. 1979–80, that every clerk of the circuit court "shall open to the examination of any person all books and papers required to be kept in his or her office and permit any person so examining to take notes and copies of such book, records, papers or minutes . . ." creates a judicially enforceable right to secure access to books and papers filed in circuit court actions in the office of the clerk of circuit court. This court has recognized that newspapers can enforce this public right because they qualify as persons who properly come under the umbrella of the Wisconsin statutes providing rights of examination of public records. *State ex rel. Journal Co. v. County Court*, 43 Wis. 2d 297, 308, 168 N.W.2d 836 (1969).

■

We conclude that the newspapers' interest in opening the court file is a legally protected interest under sec. 59.14 and that the issue raised by the newspapers relates to the transaction which is the subject of the Bilder action. Even though the issue of the sealing or opening of the file was not the main objective of the Bilder action, Bilder made the issue important when he moved to seal the court file on the day he filed his action and when he

made the permanent sealing of the file a condition of the stipulation dismissing the suit.

The question remains whether the newspapers' legally protected interest is sufficiently related to the transaction which is the subject of the action to justify the newspapers' intervention in this case as a matter of right. Neither the statutes nor Wisconsin case law defines the sufficiency of the "interest relating to the property or transaction which is the subject of the action" necessary to establish a right of intervention. Because sec. 803.09 (1) is based on Rule 24(a)(2) of the Federal Rules of Civil Procedure, we look to cases and commentary relating to Rule 24(a)(2) for guidance in interpreting sec. 803.09(1), Stats. 1981–82.

The federal courts and the commentators have not been able to derive a precise test for determining which type of interest is sufficient to allow a party to intervene as a matter of right. *See* 3B Moore's *Federal Practice* par. 24.07[2] (1982) ; 7A Wright and Miller, *Federal Practice and Procedure: Civil* sec. 1908 (1972) ; *Blake v. Pallan,* 554 F.2d 947, 952 (9th Cir. 1977).

The various federal courts have differed in their approaches. Some appear to verbalize the sufficiency of interest factor as in part a question of standing or as requiring a "direct, substantial, legally protectable interest in the proceedings." *See e.g., Hobson v. Hansen,* 44 F.R.D. 18, 24 (D.C. Cir. 1968) ; *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1124 (5th Cir. 1970), cert. denied sub nom. *Trefina A.B. v. United States,* 400 U.S. 878 (1970) ; *United States v. Perry County Bd. of Educ.,* 567 F.2d 277, 279 (5th Cir. 1978) ; *Piambino v. Bailey,* 610 F.2d 1306, 1321 (5th Cir. 1980), cert. denied, 449 U.S. 1011 (1980) ; 3B Moore's *Federal Practice* par. 24.07(2), at 24–57 to 24–59 (1982) ; 7A Wright and Miller, *Federal Practice and Procedure: Civil* sec. 1908, at 503–06 (1972) ; Kaplan, *Continuing Work of the Civil Commit-*

tee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 405 (1967).

Other courts have viewed the interest test for intervention more broadly. *Rosebud Coal Sales Co. v. Andrus*, 644 F.2d 849, 850 n. 3 (10th Cir. 1981); Shapiro, *Some Thoughts on Intervention Before Courts, Agencies and Arbitrators*, 81 Harv. L. Rev. 721, 727 (1968).

We agree with the broader, pragmatic approach to intervention as of right. In deciding whether to allow a party to intervene as a matter of right, the court should view the interest sufficient to allow the intervention practically rather than technically. *United States v. Allegheny-Ludlum Indus.*, 517 F.2d 826, 841 (5th Cir. 1975), cert. denied, 425 U.S. 944 (1976). The court measures the sufficiency of the interest by focusing on the facts and circumstances of the particular case before it as well as the stated interest in intervention and analyzes these factors against the policies underlying the intervention statute. *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967); *Rosebud Coal Sales Co. v. Andrus*, 644 F.2d 849, 850 (10th Cir. 1981).

The intervention statute attempts to strike a balance between two conflicting public policies. The original parties to a lawsuit should be allowed to conduct and conclude their own lawsuit; persons should be allowed to join a lawsuit in the interest of the speedy and economical resolution of controversies. *Atlantis Devel. Corp. v. United States*, 379 F.2d 818, 824 (5th Cir. 1967); *United States v. City of Jackson*, 519 F.2d 1147, 1150–51 (5th Cir. 1975); Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801–803*, 59 Marq. L. Rev. 1, 108 (1976).

Courts using the pragmatic, policy-based approach thus view the interest test as "primarily a practical guide to disposing of lawsuits by involving as many apparently

concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C. Cir. 1967). As Chief Judge Bazelon wrote in *Smuck v. Hobson,* 408 F.2d 175, 179–80 (D.C. Cir. 1969):

"The decision whether intervention of right is warranted thus involves an accommodation between two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending. Since this task will depend upon the contours of the particular controversy, general rules and past decisions cannot provide uniformly dependable guides. . . . [T]he [interest] requirement should be viewed as a prerequisite rather than relied upon as a determinative criterion for intervention. If barriers are needed to limit extension of the right to intervene, the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to the task. If those requirements are met, the nature of his 'interest' may play a role in determining the sort of intervention which should be allowed—whether, for example, he should be permitted to contest all issues, and whether he should enjoy all the prerogatives of a party litigant."

The decision to allow or deny intervention as of right regarding the sufficiency of interest is a question of law. Therefore we review the circuit court's decision *de novo. United States v. Allegheny-Ludlum Indus.,* 517 F.2d 826, 841 (5th Cir. 1975), cert denied, 425 U.S. 944 (1976); Shreve, *Questioning Intervention of Right—Toward a New Methodology of Decisionmaking,* 74 Nw. U.L. Rev. 894, 901 (1980). We look, as we have said, at the facts and circumstances of this case against the background of the policies underlying the intervention rule. We conclude, as did the circuit court, that the newspapers have a right to intervene in this case. The newspapers have a protectable legal interest in opening the documents to public examination; the sealing of the documents is a sig-

nificant issue in the lawsuit. The parties agree that the newspapers could have initiated a separate mandamus action against the clerk of circuit court to order the clerk to open the records. Thus intervention here furthers judicial administration since intervention allows a final decision on a key issue to be reached in a single lawsuit rather than having multiple lawsuits and multiple judicial decisions on the same subject.[2] The intervenors' claim would not make the Bilder lawsuit complex or unending.

Bilder's second objection to the intervention is that the motions to intervene were not "timely" since the original parties had submitted a settlement agreement to the circuit court contemporaneously with the newspapers' motions to intervene. We find little merit in this contention.

There is no precise formula to determine whether a motion to intervene is timely. The question of timeliness must necessarily be left to the discretion of the circuit court. *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977). The critical factor is whether in view of all the circumstances the proposed intervenor acted promptly. *United Airlines v. McDonald,* 432 U.S. 385, 395–96 (1977). A second factor is whether the intervention will prejudice the original parties to the lawsuit. 3B Moore's *Federal Practice* par. 24.13, at 24–154 to 24–157 (1982).

The Gazette Printing Co. moved to intervene within nine days after the action was filed and at the same time

---

[2] Under an intervention of right statute identical to sec. 803.-09(1), Stats. 1981–82, the Delaware Supreme Court judged a newspaper's right of access to court records to be "clearly substantial, albeit collateral to the merits of the divorce action," and "intervention, rather than a new lawsuit, such as mandamus," was considered to be the "most expeditious and best method." *C. v. C.,* 320 A.2d 717, 720 (Del. 1974).

the parties proposed to seal the files permanently. The newspapers' failure to apply for intervention at an earlier time did not harm or prejudice any party to the litigation. Even though the parties had formulated a stipulation to settle the lawsuit, the circuit court had not yet considered or approved it; thus, the original action was still pending at the time of intervention.

We conclude that intervention was both proper and timely in this case.

## III.

We now consider the substantive issue of law raised by the newspapers: whether the circuit court erred in rescinding its earlier order sealing the file, thus opening the exhibits filed in this case to public examination. As we stated earlier, the newspapers base their claim on their reading of sec. 59.14(1), Stats. 1979–80, which provides that records in the office of the clerk of the circuit court shall be open for public examination:

"**59.14 Offices where kept; when open.** (1) Every sheriff, clerk of the circuit court, register of deeds, county treasurer, register of probate, county clerk and county surveyor shall keep his or her office at the county seat in the offices provided by the county or by special provision of law; or if there is none, then at such place as the board directs. The board may also require any elective or appointive county official to keep his or her office at the county seat in an office to be provided by the county. All such officers shall keep their offices open during the usual business hours each day, Sundays excepted, but the board may permit the officers to close their offices on Saturday or on legal holidays for such time as the board directs. With proper care, the officers shall open to the examination of any person all books and papers required to be kept in his or her office and permit any person so examining to take notes and copies of such books, records,

papers or minutes therefrom except as authorized under s. 19.59(3)(d)."

Bilder claims that the documents submitted with his petition should not be categorized as court documents maintained by the clerk of circuit court under sec. 59.14 (1), but should retain their status as town board records which are governed by sec. 19.21(1), (2), Stats. 1979–80. Sec. 19.21, 1979–80, is similar to sec. 59.14(1) in providing for public examination of records, but the two statutes govern different public offices and have been given different interpretations by this court.

Sec. 19.21(1), (2) provides:

"**19.21 Custody and delivery of official property and records.**

"(1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.

"(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof prescribes, examine or copy any of the property or things mentioned in sub. (1) . . . ."

This court has distinguished sec. 59.14(1) from sec. 19.21, concluding that sec. 19.21, unlike sec. 59.14(1), is a statement of the common law rule that public records are open to public inspection. Since sec. 19.21 is a statement of the common law, it has been interpreted by this court as embodying the common law limitations on the public's access to public records. *International Union v. Gooding*, 251 Wis. 362, 372, 29 N.W.2d 730 (1947) ; *State*

*ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 685a, 139 N.W.2d 241 (1966) (rehearing). When the court determines whether the record covered by sec. 19.21 is to be sealed, the court must balance the harm to the public interest from public examination of the records against the benefit to the public interest from opening these records to examination, giving much weight to the beneficial public interest in open public records. *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 681–83, 137 N.W.2d 420 (1965); *Beckon v. Emery,* 36 Wis. 2d 510, 516, 153 N.W.2d 501 (1967); *State ex rel. Journal Co. v. County Court,* 43 Wis. 2d 297, 305, 168 N.W.2d 836 (1969); *Newspapers, Inc. v. Brier,* 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979). In contrast to this balancing approach under sec. 19.21, we concluded in *State ex rel. Journal Co. v. County Court,* 43 Wis. 2d 297, 308, 168 N.W.2d 836 (1969), that sec. 59.14 is a legislative declaration granting those persons who properly come under its umbrella "an absolute right of inspection subject only to reasonable administrative regulations. . . ."

Sec. 59.14 reflects a basic tenet of the democratic system that the people have the right to know about operations of their government, including the judicial branch, and that where public records are involved the denial of public examination is contrary to the public policy and the public interest. The courts, whose obligation it is to ensure that the executive and legislative branches of government remain open to public scrutiny, must abide by the same high standards they prescribe for others. *State ex rel. Journal Co. v. County Court,* 43 Wis. 2d 297, 168 N.W.2d 836 (1969).

We conclude that the exhibits sought to be sealed in this case are records that the legislature intended to come under the provisions of sec. 59.14(1). Once the exhibits became a part of the pleadings in the circuit court action

they became papers required to be kept in the office of the clerk of circuit court. Secs. 801.02 and 801.14(4), (5) provide that pleadings required to be served upon a party shall be filed with the court and that filings with the court shall be made by filing with the clerk of circuit court. The clerk must file and keep all papers properly deposited with him or her in every action or proceeding. Secs. 59.39(1), 59.395(1), Stats. 1979–80.

Our inquiry does not stop, however, with categorizing the documents in issue here as falling within sec. 59.14 (1). Although we stated in the *Journal Company* case that a person requesting to examine documents under sec. 59.14 has an absolute right of examination, we have also recognized, as the newspapers recognize, that the "absolute right" rule is not without exception. As the newspapers' briefs correctly point out, there are at least two recognized exceptions to the "absolute right" of public examination set forth in sec. 59.14(1).

The first exception allows for closing documents to public examination when there is a statute authorizing the sealing of otherwise public records. Such a clear public policy pronouncement takes precedence over sec. 59.14. Bilder argues that if the documents fall within sec. 59.14, they are covered by an exception set forth in sec. (Rule) 804.01(3) (a), Stats. 1979–80, which permits restriction of public access to certain material obtained through discovery. We reject his argument since this provision relates solely to discovery and does not govern sealing exhibits annexed to pleadings.[3]

---

[3] Sec. 804.01(3)(a), Stats. 1979–80, permits a court to issue orders sealing depositions or permitting confidential discovery "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Closing discovery documents gives rise to policy considerations which may differ from those involved in closing

[11]

The second exception to the absolute rule set forth in sec. 59.14(1) is that disclosure must yield if it infringes on a constitutional right. Bilder claims that disclosure of the exhibits would deprive him of his state constitutional right to a remedy "for all injuries, or wrongs which he may receive in his person, property or character." Art. I, sec. 9, Wis. Const. He would have us apply *State ex rel. Ampco Metal, Inc. v. O'Neill*, 273 Wis. 530, 78 N.W.2d 921 (1956), in which we held that where disclosure of alleged trade secrets during a trial would deny the plaintiff a remedy for the wrong it sought to prevent, the circuit court could allow *in camera* testimony on the issue. Our holding in *Ampco* does not govern this case. In an action to protect trade secrets the value of the trade secret—and consequently the value of the action—depends on keeping secret the trade secret, and the plaintiff's case rests on the claim of a legal right to have the matter kept secret. Disclosure in this case, unlike in *Ampco,* will not destroy the basic cause of action. Bilder's suit was to compel the town board to follow the prescribed procedures for disciplinary actions. Bilder's action survives whether the court file is open or closed. While Bilder may have a personal interest in keeping the charges against him closed to the public, he cites no authority that he has a legal right to have charges against him brought in closed proceedings or kept confidential in order to protect his reputation. We conclude that Bilder's case does not fall within the second exception.

---

pleadings and annexed documents. Courts have expressed conflicting views as to the standards to be used in evaluating protective orders restricting public examination of documents resulting from discovery. *In Re Halkin,* 598 F.2d 176 (D.C. Cir. 1979); *In Re San Juan Star Co.,* 662 F.2d 108 (1st Cir. 1981); *Koster v. Chase Manhattan Bank,* 93 F.R.D. 471 (S.D. N.Y. 1982); *Rhinehart v. Seattle Times Co.,* 98 Wash. 2d 226, 654 P.2d 673 (1982).

Where court records are concerned, there may be a third exception to the sec. 59.14 (1) "absolute right" of examination. The circuit court under its inherent power to preserve and protect the exercise of its judicial function of presiding over the conduct of judicial proceedings has the power to limit public access to judicial records when the administration of justice requires it. In *Ampco, supra,* 273 Wis. at 539, we held that the statutes requiring judicial proceedings to be public, secs. 757.14, 757.70 (1), Stats. 1979–80, would be unconstitutional if they were construed to deprive the courts "of their inherent power to take certain evidence *in camera* where the rights of parties, or witnesses, could not otherwise be protected." This court concluded that *Ampco* involved one of those *rare situations* where justice could not be administered without holding *in camera* proceedings, and we commanded the circuit court to take all evidence as to the nature of Ampco's claimed trade secrets *in camera* and to seal the record of the evidence so taken.

Similarly, this court in the *Journal Company* case, *supra,* 43 Wis. 2d at 311–12, discussing sec. 59.14, recognized that the inherent power of the courts "in many respects goes beyond those conferred by statute." But in the *Journal Company* case the court was not persuaded that the court's inherent authority "exists with respect to withholding a decision." Indeed the court said in the *Journal Company* that the circuit court had an inherent obligation to promptly make its decisions available to the public. *Id.* at 312.

To overcome the legislatively mandated policy favoring open records and to persuade the circuit court to exercise is inherent authority, the party seeking to close court records bears the burden of demonstrating, with particularity, that the administration of justice requires that the

court records be closed. If the party seeking closure sufficiently demonstrates the need to close the records, the court should examine the documents *in camera* to determine whether in light of the reasons specified for closing the documents, the administration of justice requires restricting public access. Even then an impoundment order is appropriate only when there is no less restrictive alternative available. The circuit court initially, and the appellate court on review, must decide as a matter of law whether the reasons asserted for closure are sufficient.

As grounds for closing the file in this case Bilder asserts a public interest in protecting citizens' reputations and claims generally that disclosure of the contents of the documents would be "extremely damaging to [his] character, reputation, and future career in law enforcement." Even if Bilder could persuade us that there is a legal guarantee of present enjoyment of reputation or a general legislative policy to protect a citizen's general interest in his or her reputation, we do not find Bilder's generally asserted interest sufficient to overcome the public policy embodied in sec. 59.14 or to support the exercise of the court's inherent power. Any use of the judicial process opens information about a party's life to the public's scrutiny, and such information may be damaging to reputation. Furthermore, Bilder is not an ordinary citizen. He is a public official subject to close public scrutiny. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974); *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964). The documents in issue apparently contain information relating directly to Bilder's professional conduct as police chief. By accepting his public position Bilder has, to a large extent, relinquished his right to keep confidential activities directly relating to his employment as a public law enforcement official. The police chief cannot thwart the public's interest in his official conduct by claiming

that he expects the same kind of protection of reputation accorded an ordinary citizen. Even if Bilder could explain why his reputation interest should be protected, he does not explain how opening the documents in issue here will have an incremental effect on his reputation when the public must already know, even by virtue of proceedings he pursues in this court, that he has been suspended as police chief and that he has been charged with misconduct or questionable conduct.

Bilder further argues that sec. 19.85(1)(b), (f), Stats. 1979–80, permitting closure of governmental meetings relating to certain personnel matters, sets forth a legislative policy to close such personnel records to protect the employee's reputation and justifies sealing the court files in this case. In sec. 19.35 1981–82, the legislature has declared that the personnel and other exemptions to the open meeting law are indicative of public policy and that the exemptions may be used as grounds for denying public access to public records under sec. 19.21 1979–80 (now sec. 19.35 1981–82). As the newspapers correctly point out, the laws regulating open meetings (sec. 19.81 *et seq.*) and the ethics codes for local governmental officials (sec. 19.59(3)(d) 1981–82), empower, but do not require, the governmental unit to close certain proceedings relating to personnel to the public. Thus, even if we were to say that secs. 19.35 and 19.81 1981–82, apply to this case, and we do not say they do, they would not aid Bilder. The legislature has provided that the governmental unit, not the individual, has the power to open or close meetings and it is the legal custodian of the record, not the citizen, who has the right to have the record closed if the custodian makes a specific demonstration that there is a need to restrict public access at the time the request to inspect is made. Although the town did join the stipulation to close the court records, it is Bilder, not the town, who is fighting in this proceeding to keep the documents closed.

Bilder also generally asserts that third parties may be harmed by disclosure of some of the documents. He makes these assertions for the first time on appeal. He does not sufficiently describe the persons who may be hurt or how these persons may be hurt, and Bilder does not show that these persons are unable to vindicate whatever rights they may have. Nor would Bilder's assertions support sealing all the documents in toto.

We determine that Bilder has not made the necessary minimal showing that the administration of justice requires closure of the records in this case; therefore, we do not remand to the circuit court to examine the documents *in camera* to determine whether the administration of justice requires restricting access to the documents in light of the reasons specified for such restriction.

We need not—and do not—decide whether a circuit court may ever use its inherent power to seal court documents permanently. In this case, Bilder has failed to overcome the legislative policy set forth in sec. 59.14 that the denial of public examination of a court record is contrary to the public policy and the public interest favoring open court records. Bilder had the obligation, as the party seeking to close court records, to demonstrate that the administration of justice requires denying public access to court records and to state with specificity the reasons for closure. Actual, as opposed to hypothetical, factors must be set forth to demonstrate that the administration of justice requires closure. It is not for the circuit court or an appellate court to hypothesize or consider reasons for closing court records not asserted by the interested person.

We conclude that Bilder has not shown that he comes within the two exceptions to the absolute disclosure rule of sec. 59.14 or that the circuit court should have exercised its inherent power to close the court file. Because we conclude that the circuit court was correct in permit-

ting public examination of the records in this case, we need not discuss the newspapers' asserted state or federal constitutional rights of access. We recognize, however, that sec. 59.14(1) furthers many of the same interests which underlie the first amendment to the federal Constitution and art. I, sec. 3, of the Wisconsin constitution.

For the reasons set forth, we affirm the order of the circuit court unsealing the documents and not permitting Bilder to remove the exhibits from the office of the clerk of circuit court.

*By the Court.*—Order affirmed.