C.L., C.C., C.S.S., S.T.H., T.S. and D.M., Plaintiffs-Co-Appellants,

v.

Dr. Jack C. EDSON, Luther Hospital, St. Paul Fire and Marine Insurance Co., Dr. Edward R. Brousseau, Dr. Joseph M. Tobin, Dr. Kenneth W. Halgrimson, Northwest Psychiatric Clinic, Ltd., and Chubb Pacific Indemnity Group, Defendants-Appellants,

v.

EAU CLAIRE LEADER-TELEGRAM, Intervenor-Respondent.

Court of Appeals

*No. 86–1517. Orally argued April 20, 1987.—Decided May 19, 1987.*

(Also reported in 409 N.W.2d 417.)

168

169

170

171

For the plaintiffs-co-appellants, C.L., C.C., C.S.S., S.T.H., T.S. and D.M., there were briefs and oral argument by *Ronald S. Aplin* of *Johnson, Weis, Paulson & Priebe, S.C.* of Rhinelander.

For the defendants-appellants, Luther Hospital and St. Paul Fire and Marine Insurance Co., there was oral argument by *John Richie* of *Misfeldt, Olson & Stark* of Eau Claire.

For the defendant-appellant, Jack D. Edson, there was oral argument by *Drew Ryberg* of *Garvey, Anderson, Kelly & Ryberg, S.C.* of Eau Claire.

For the defendants-appellants, Dr. Edward R. Brousseau, Dr. Joseph M. Tobin, Dr. Kenneth W. Halgrimson, Northwest Psychiatric Clinic, Ltd., and Chubb Pacific Indemnity Group, there was oral argument by *Arnold Anderson* of *Carroll, Parroni, Postlewaite, Anderson & Graham* of Eau Claire.

For the intervenor-respondent, Eau Clair Leader-Telegram, there was a brief and oral argument by *Linda Clifford* of *La Follette & Sinykin* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   In this appeal, the original plaintiffs and defendants in a civil suit (original parties) join together to oppose a postjudgment intervention action by the Eau Claire Leader-Telegram. The original parties challenge the newspaper's entitlement to intervene, the timeliness of the newspaper's intervention, and the trial court's order allowing public disclosure of sealed settlement documents. Because the postjudgment intervention was timely and did not prejudice the original parties and because the circuit court properly ordered edited versions of the records disclosed, we affirm.

C.L. and five other plaintiffs, either minor or otherwise incompetent, sued Dr. Jack Edson, other members of his psychiatric clinic, and the hospital he was associated with. The plaintiffs alleged that Edson sexually and psychologically abused them under the

pretense of treating them for various mental disorders. The suit invoked substantial local media coverage.

The original parties settled the suit and stipulated to sealing the settlement records to "protect the interests of" and "to avoid further psychological trauma" to the original plaintiffs. After reviewing and approving the settlement agreements pursuant to sec. 807.10, Stats., the circuit court sealed certain records, including the settlement agreements. On May 17, the circuit court dismissed the actions with prejudice, pursuant to the parties' stipulations.

Four months later, the newspaper first sought access to the sealed documents in a letter to the clerk of court. The clerk denied access. The newspaper next commenced a mandamus action under sec. 19.37(1)(a), Stats., on October 24, 1985, to compel disclosure of the sealed records. The action named the circuit court judge and the clerk of court, but not the original parties. The judge, clerk and newspaper stipulated to open the records providing no one made any objection. The original parties, however, objected and the records remained closed.

Consequently, on February 25, 1986, the newspaper moved to intervene in the original action, which had been dismissed more than nine months earlier. After a hearing, the circuit court granted the motion to intervene, finding that the intervention would not prejudice the parties. After allowing the intervention, the circuit court heard arguments on opening the records. Following this hearing and an *in camera* inspection of the documents, the court determined that the records could be opened after the deletion of any identifying references to the plaintiffs. The rec-

ords remain sealed, however, awaiting the outcome of this appeal.

The original parties initially challenge the newspaper's entitlement to intervene as a matter of right, and they specifically contend that the motion to intervene was untimely. We reject these arguments.

■

Section 803.09, Stats., frames our analysis of the newspaper's intervention motion.[1] It requires: 1) that the movant demonstrate an interest "relating to the property or transaction which is the subject of the action"; 2) that the ability of the movant to protect its interest will be impaired by the disposition of the original action; 3) that the movant's interest will not be adequately represented by an original party to the action; and 4) that the motion to intervene be made in a timely fashion. In addition, the statute requires the trial court to determine whether the intervention will unduly prejudice the adjudication of the original parties' rights. Application of the intervention statute to a given set of facts is a question of law. *Bilder v. Township of Delavan,* 112 Wis. 2d 539, 549, 334

---

[1]Section 803.09, Stats., provides in part:

**Intervention.** (1) Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

(2) Upon timely motion anyone may be permitted to intervene in an action when the movant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

N.W.2d 252, 258 (1983). We therefore decide this issue independent of the trial court's resolution. *Id.*

In *Bilder,* our supreme court upheld a newspaper's entitlement to intervene in order to open court documents to public examination. *Id.* Bilder, Delavan's police chief, sued the town for reinstatement after he had been suspended during a nonpublic town board investigation of complaints against him. Bilder had obtained a court order sealing the documents and pleadings filed in his reinstatement suit. A local newspaper moved to intervene in order to open the court documents to public scrutiny.

Preliminarily, the *Bilder* court recognized the newspaper's standing, as a representative of the public, to seek enforcement of the statute granting public access to court records. *Id.* at 546, 334 N.W.2d at 256. However, relying on two of sec. 803.09's elements, Bilder questioned the intervention's relation to the subject of the original action and its timeliness. The court held that Bilder's motion to seal the court documents made their disclosure a significant issue in the original action. *See id.* at 546–47, 334 N.W.2d at 256–57. The court further held that the intervention motion, made at the same time the original parties attempted to seal the documents, caused no prejudice and was therefore timely. *Id.* at 550–51, 334 N.W.2d at 258–59.

The *Bilder* court further noted that in addition to its specific elements, the intervention statute represented an attempt to strike a balance between two public policies: the right of parties to join a lawsuit in the interest of a speedy and economical resolution of controversies, and the original parties' interest in conducting and concluding their own lawsuit. *Id.* at 548, 334 N.W.2d at 257. The court concluded that

because the newspaper's intervention would not make the original suit complex or unending, the newspaper's interests in intervention outweighed the plaintiff's interest in concluding the suit without interference. *Id.* at 550, 334 N.W.2d at 258.

Here, the statutes create a similar right in the public to have access to court records. The newspaper properly asserts this right on the public's behalf. *See id.* at 546, 334 N.W.2d at 256. The newspaper's interest in intervening is sufficiently related to an issue in the original action that was made significant by the original parties' stipulating to shield court records from public view. *See id.* at 546–47, 334 N.W.2d at 256–57. We also conclude that the resolution of the original action, namely the sealing of the settlement documents, clearly impairs the newspaper's ability to examine those documents. Further, because all the original parties oppose the intervention, none of them would adequately represent the newspaper's interests.

Additionally, we conclude that the newspaper's intervention would not prejudice the parties by making the lawsuit complex or unending. The plaintiffs' lawsuits are resolved. A decision here will be a final resolution to the single issue of whether the sealed records, as edited, shall be open for public inspection. Accordingly, we conclude that the newspaper has established an entitlement to intervene in this action.

In addition to showing this entitlement, however, the newspaper must show that it moved to intervene in a timely fashion. A determination of timeliness under sec. 803.09 is a question for the trial court's

discretion. *Bilder,* 112 Wis. 2d at 550, 334 N.W.2d at 258. Although the statute does not define timeliness, our supreme court has devised a two-part test. To apply the first branch of this test, the court must determine whether, in view of all the circumstances, the intervenor acted promptly. *Id.* The general rule is that motions for intervention made after entry of final judgment will be granted only after a strong showing of justification for failure to request intervention sooner. *Sewerage Comm'n v. DNR,* 104 Wis. 2d 182, 188, 311 N.W.2d 677, 680 (Ct. App. 1981).

■

Although the trial court made no explicit findings as to the promptness of the intervention motion, we conclude that in this case a finding of promptness was necessarily implied. A postjudgment motion to intervene by its nature prolongs litigation beyond the point anticipated by the original parties. However, here the newspaper could not have known its interests in disclosure until it discovered the judgment approving settlements that called for secrecy. Thus, the original parties are left to argue only that the newspaper's intervention was not prompt because it did not immediately follow the judgment's entry.

Accordingly, the original parties suggest that an intervention brought nine months after judgment lacks promptness per se. However, the newspaper first requested access to the documents about four months after the final judgment had been entered. The clerk of court formally rejected this request, and the newspaper promptly brought a mandamus action. Shortly after the original parties objected to the stipulation arrived at by the parties to the mandamus action, the newspaper moved to intervene. Therefore, this is not a case where the newspaper delayed for nine months

after it knew of the judgment. The newspaper's attempts to view the documents began a reasonable time after it knew the judgment had been entered. We conclude that, under the unique facts of this case, the newspaper's intervention was prompt.

■

In applying the second branch of the timeliness test, the trial court must determine whether the intervention will prejudice the original parties. *Bilder*, 112 Wis. 2d at 550, 334 N.W.2d at 258. Here, the trial court heard arguments, examined the record, and explicitly found that the original parties would suffer no prejudice as a result of the intervention. After hearing arguments, the court stated:

> As far as intervention, if the intervention is granted, I do not see how that would prejudice any of the parties here. It would not [affect] any previous matters that have taken place, ....

From the context of the hearing, it is clear that the court's reference to "previous matters" included a finding that the intervention would not affect the terms of the settlement between the parties.

■

Moreover, the parties have not shown any prejudice resulting from having to defend a postjudgment intervention nine months after judgment. Certainly there is a point where evidence material to the intervention begins to disappear, necessary parties disperse, and records are destroyed. In such a case, the passage of time would clearly prejudice the ability of the original parties to defend against intervention. However, the original parties have failed to show any such prejudice. They merely assert their interest in concluding their lawsuit. As we determined earlier,

the newspaper's entitlement outweighs this interest. Therefore, because the motion to intervene causes no prejudice to the original parties, we conclude that for practical purposes the motion was timely.

Having determined that the trial court properly granted the newspaper's motion to intervene, we now turn to the original parties' challenge to disclosure of the documents. Depending on the documents' custodian, Wisconsin courts have applied two distinct tests to questions of sealing public documents. In *Bilder,* the supreme court based its analysis on the statutory right created by sec. 59.14, Stats., governing public access to records held by the clerk of court. Until recently, sec. 59.14 was the only statute governing public access to court records. The test applied in *Bilder* recognized the public right to access created by the statute as "absolute," but with several well-defined exceptions, and "independent and in substitution for the common law." *See State ex rel. Journal Co. v. County Court for Racine County,* 43 Wis. 2d 297, 308, 168 N.W.2d 836, 841 (1969).

The "absolute right" analysis applied to court documents under sec. 59.14 contrasts with the test applied to most other public documents under ch. 19, Stats. Chapter 19, on its face, also appears to require absolute access to public records. However, our supreme court has held that because the original version of the open records law, sec. 18.01, Stats. (1917), was an explicit codification of then-existing common law, the statutory open records law took on common law exceptions to public access. These common law exceptions are implicit in today's ch. 19 open records law. *Hathaway v. Joint Sch. Dist. No. 1,* 116 Wis. 2d 388, 395, 342 N.W.2d 682, 686 (1984). Thus, because the test applied to disclosure of documents under ch. 19

involves a common law approach, it includes a balancing aspect not present in the sec. 59.14 "absolute right" test.

█

A recent amendment to sec. 19.32(1), Stats., added "any court of law"[2] to the list of authorities subject to the ch. 19 open records law. As a result, we are now faced with the question of which test to apply to this case. Generally, we presume that the legislature acts with full knowledge of existing statutes and how the courts have interpreted these statutes. *See Glinski v. Sheldon,* 88 Wis. 2d 509, 519–20, 276 N.W.2d 815, 820 (1979). We conclude that due to the amendment, the legislature intended the courts to apply the ch. 19 balancing test to questions involving the disclosure of court records. Accordingly, we apply the following test:

> [O]ne manner in which the public's right to inspect public documents may be limited is by a *statutory provision* which embodies an exception to sec. 19.21(1), Stats. (1979–80).
>
> . . . .
>
> [T]he public's right to inspect public records is not only subject to *statutory provisions which expressly provide otherwise* but it is also subject to the limitations which existed under *common law.*
>
> . . . .
>
> [T]he third exception to the public's right to inspect public documents is where the *public interest* in keeping a public record confidential *outweighs* the *public's right* to have access to the documents. ... We have concluded ... where *statutes, common*

---

[2]Chapter 335, Laws of 1981, effective January 1, 1983.

181

*law,* or *court decisions* have not limited the public's right to examine records, "presumptively public records and documents must be open for inspection."

*Hathaway,* 116 Wis. 2d at 395–97, 342 N.W.2d at 686 [emphasis added].

We view the application of this test to a given set of facts as a question of law requiring no deference to the trial court's legal conclusions. *See Department of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd,* 447 U.S. 207 (1980). We first stress that public records, including court documents, are subject to a strong presumption favoring their disclosure. *See Hathaway,* 116 Wis. 2d at 396, 342 N.W.2d at 686. Here, the original parties wrongly attempt to place the burden on the newspaper to show why the documents should be opened. Once the newspaper has demonstrated a sufficient interest and has been allowed to intervene, the burden lies with the original parties to rebut the strong presumption to the contrary. In order to overcome the presumption favoring disclosure, under the *Hathaway* test, the original parties must show that public interests favoring secrecy outweigh those favoring disclosure.

The original parties first argue that because they are private individuals, there is no compelling public interest in disclosing the sealed documents. The presumption favoring disclosure reflects public interests that are independent of the parties' status as private persons. Among the factors favoring disclosure is the court's inherent duty to promptly make its

decisions available to the public. *Journal Co.,* 43 Wis. 2d at 312, 168 N.W.2d at 843. Specifically,

> [t]he courts have been the great repositories of personal liberty, and their obligation is not only to see that the conduct and performance of executive and legislative officials is open to public scrutiny, but to maintain for themselves the high standards that they prescribe for others. ... While we recognize the exemplary purpose behind the trial judge's order herein, we can think of no device more subject to abuse, more conducive to a climate favoring star chamber judgments, and more likely to result in judicial caprice, than a mandate of this court upholding the order impounding this decision.

*Id.* at 312–13, 168 N.W.2d at 843.

Moreover, sec. 807.10, requiring judicial review of settlements involving minors, represents a legislative mandate for scrutiny. This mandate is better served when the public can monitor judicial supervision of minor settlements. Additionally, a private party gives up a certain expectation of privacy when it commences a civil suit. *Bilder,* 112 Wis. 2d at 557, 334 N.W.2d at 261. Finally, the defendants in this case were members of a highly regulated profession. Such regulation shows the public's interest in scrutinizing alleged wrongdoing among members of the psychiatric profession. These considerations outweigh the parties' objections to disclosure simply on the grounds that they are not public figures.

The original parties also argue that the public interest in patient welfare, as evidenced by statutes

such as sec. 51.75(1), Stats.,[3] weighs against disclosure. They produced expert testimony to indicate that the plaintiffs could be psychologically harmed by further publicity.[4] First, sec. 51.75(1) is not a specific statutory exception to open records law. *Hathaway,* 116 Wis. 2d at 397, 342 N.W.2d at 687. Second, although we realize the potential harm to the original plaintiffs, there is no factual foundation shown to support the expert's conclusion. We agree with the trial court's finding that the publicity already devoted to this case would make any additional exposure marginally damaging at worst. More important, our decision has no direct influence over the media. Regardless of the result here, the press may or may not publish another story on the Edson cases as it chooses.

Similarly, the parties argue that Wisconsin's general statutory scheme protects minors and thus favors closure. This argument must fail. Although Wisconsin law offers special protections to minors, it provides no specific exceptions to the open records law that are applicable to this case. Moreover, the public's

[3]Section 51.75(1) (Interstate Compact on Mental Health), declares generally that the state's public policy favors benefiting mental health patients.

[4]The expert's affidavit states in part:

Your affiant is of the opinion, to a reasonable degree of probability, that local newspaper disclosure of details and facts developed in this litigation to the public at large would tend to aggravate or heighten the symptoms experienced by the plaintiffs [phobias, guilt reactions, sleep disturbances, startle reactions, hyper vigilance, and avoidance responses to stimuli which represent or symbolize their original traumas.] This is true regardless of whether the names of the plaintiffs are disclosed in publication.

interest in protecting minors is likely better served by allowing public scrutiny of minor settlements.

The parties also assert that public interest in protecting the privacy of individuals outweighs the need for public disclosure. This argument has been rejected in numerous cases. *See, e.g., Bilder,* 112 Wis. 2d at 557–58, 334 N.W.2d at 261–62.

The parties further assert that because minor settlements, but not settlements between adults, are subject to judicial and potential public scrutiny by operation of sec. 807.10, the law discriminates impermissibly against minors. We disagree. Such discrimination is based on a reasonable distinction and therefore would be upheld under constitutional analysis.

Finally, the parties contend that the court's inherent authority to close records in the interest of administering justice compels closure. They contend that making these settlements public will have a chilling effect on future litigants and will counteract the public interest in encouraging settlements. These arguments are speculative. In addition, they are unpersuasive in light of the trial court's specific remedy. An edited version of the settlements will have at most a marginal effect on these parties because it respects their privacy. The parties have failed to show that the public's interest in encouraging settlements overcomes the strong presumption favoring disclosure of court documents.

We conclude that the circuit court correctly weighed the considerations presented by the original parties in deciding that the public interest in disclo-

sure outweighed any need for secrecy. Accordingly, we affirm the circuit court's decision.

*By the Court.*—Orders affirmed.